## SMITH v. MORTON INDEPENDENT SCHOOL DIST.

No. 4438.

Court of Civil Appeals of Texas. Amarillo.
June 3, 1935.

Rehearing Denied Sept. 9, 1935.

Bean, Duggan & Bean, of Lubbock, for appellant.

Loyd R. Kennedy, of Morton, and Lockhart & Brown, of Lubbock, for appellee.

HALL, Chief Justice.

The appellant, Smith, sued the school district for a breach of contract, under the terms of which he alleges he had been appointed superintendent of schools in said district. The prayer is that the school board be ordered to reinstate him as school superintendent and pay his salary, or, in the alternative, he prays for damages in the sum of $1,362.

He alleges: That the district was created by Special Act of the 39th Legislature, which became effective March 18, 1925

(chapter 113). That the act provides for a board of trustees, consisting of three persons, with proper qualifications, whose management and control of the schools within the district should be to the exclusion of every other authority except that of the State Superintendent of Public Instruction and the State Board of Education. That about February 16, 1934, the trustees of said district were W. A. Woods, W. B. Lackey, and R. D. Butts, and òn said last date they entered into a contract in writing with him to serve as superintendent of the schools of said district for a period of twelve consecutive months, including the school year 1934–1935. That he is a teacher by profession, holding a first-class certificate. The contract provides that the term should begin on the 1st day of August, 1934, and his salary was fixed at $113.50 per school month. The contract was executed by the members of the board and appellant about February 26, 1934, and was approved by J. L. Winder, the county superintendent of Cochran county, as required by law. That thereafter, on April 7th, an election was held in that district for the purpose of choosing trustees, and six of the present board of trustees were elected. Arthur A. Beedy is a holdover member of the first board. That said new board has been composed of seven men since April 7, 1934, although the law requires only three members. That six or seven men were acting at the time they attempted to discharge the appellant on or about April 14, 1934. On said date, upon motion made, the members of the board voted to discharge the appellant, to become effective August 1, 1934, and on or about April 18, 1934, at a meeting of the board, one Joe Nicewarner was elected superintendent of said schools for the school term 1934–1935. That appellant was given no hearing before the board prior to or at the time of his discharge, no charges were preferred against him, and no reason was given for his discharge except that the people of Morton Independent School District did not like him. That no charges were made that the contract was procured through fraud, mistake, or imposition. That because the new board had more members than the law permitted, their acts in attempting to discharge appellant were void, and were void for the further reason that he was given no hearing and no charges that the contract was procured through fraud, etc., were ever made. He alleges further that he continued to act as superintendent until July 31, 1934, as required of him by his contract, but that shortly before the expiration of the contract demand was made upon him by the trustees for possession of the teacherage, which is usually furnished by the school district to its superintendent of schools, and that about July 31, 1934, he surrendered possession of said teacherage. That on August 1st he was ready to enter upon the discharge of his duties as superintendent for the school year 1934–1935, as required by his contract of February 16, 1934, but the defendant, through its trustees, refused to allow him to act as superintendent, and the said Joe Nicewarner thereupon entered upon the discharge of the duties of superintendent. That he was ready, able, and willing to comply with the terms of his contract, but that the school board has wholly failed and refused to allow him to fulfill said contract or to enter upon the discharge of his duties upon August 1, 1934. That on August 1, 1934, when the order discharging him became effective, a great majority of the schools in Texas had employed teachers and superintendents for the ensuing year, and although he tried diligently, he has failed to secure other employment to mitigate the damages he suffered or would suffer if not permitted to fulfill his contract. That he appealed to the county superintendent of Cochran county on August 10, 1934, where a hearing was had on such appeal on September 3d, and the action of the board of trustees was affirmed. Thereafter, on September 8th, he appealed from the action of the county superintendent to the county board of school trustees, where a hearing was had on said date, and where the action of the county superintendent was affirmed, and on such date he elected to appeal to the district court and filed this suit. He alleges that he would have received $1,362 under the terms of his contract as salary if he had been allowed to fulfill the contract, and because he was unable to obtain any other employment he suffered damages to the full amount. That there were or would be funds available for the salary of the teachers and superintendent during said school year in excess of the amount required to pay his damages. That approximately $20,000 will become available for the payment of such salary, and such funds are available for the payment of the damages suffered by appellant.

In answer to plaintiff's petition, the district filed what is styled a "plea in abate-

856

ment," which, omitting the formal parts, is as follows:

"1. This defendant says that plaintiff's suit should be abated and dismissed for the reason that plaintiff's petition shows on its fact that the purported contract upon which plaintiff sues was not entered into by a legal Board of Trustees of the Morton Independent School District, whereas the acts of the persons named as having entered into said contract with plaintiff could not be binding upon this defendant.

"2. Because plaintiff's petition shows on its face that the contract purported to have been entered into between plaintiff and certain parties alleged to represent this defendant was not such contract as is authorized by law to be entered into by an independent school district, in that said contract described in plaintiff's petition is alleged to have been for the period from August 1, 1934 to July 31, 1935, whereas the law requires such contracts to be for the period from July 1st of the year for which they are made to the next succeeding June 30th.

"3. Because plaintiff's petition shows on its face that this court is without jurisdiction of this suit for the reason that the plaintiff has not complied with the requirements of the law with reference to referring said matter for adjudication to the State Superintendent and the State Board of Education.

"4. Because plaintiff's petition shows on its face that plaintiff, after his alleged discharge on April 14, 1934, waited until August 10, 1934 before attempting to appeal from an order discharging him, and that by the long lapse of time plaintiff lost any right of appeal he might have had, being guilty of laches and acquiesced in the action of this Board in so discharging him.

"5. Because plaintiff's petition shows on its face that this court is without jurisdiction of this suit, which is for damages, because plaintiff in said petition alleges a breach of contract and sues for damages by reason of such breach; and this court is without jurisdiction of such matter which is not an appeal from a judgment of the County Superintendent and County School Board upholding defendant's acts in discharging plaintiff, but is an independent suit for damages, and the amount involved is below the jurisdiction of 'the court."

Without hearing any evidence, the court sustained the plea in abatement. We are not informed by the record upon what ground or grounds the plea was sustained. The plea in abatement is in the nature of demurrers and exceptions to the petition upon several grounds. Becker v. Becker (Tex. Civ. App.) 218 S. W. 542. Since no evidence was introduced by either party, the plea was treated as demurrers or exceptions by counsel and by the court, and the contentions will be considered upon the same theory in this court.

■ The Special Act of the Legislature creating the Morton Independent School District in 1925, and the provision that the board of trustees of said district shall consist of three members, is a valid law and has not been modified, amended, or repealed. Article 7, § 3, of the Constitution, prior to its amendment in November, 1926, provided that the Legislature had authority to form school districts either by general or special law, and that the enactment of a general law by the Legislature relating to independent school districts did not exhaust the Legislature's powers. Cain v. Lumsden (Tex. Civ. App.) 204 S. W. 115; Frass v. Darrouzett Indep. School Dist. (Tex. Civ. App.) 277 S. W. 751.

Article 7, § 3, of the Constitution, under which these and other cases were decided, was amended on November 26, 1926. Proclamation putting the amendment into effect was issued January 20, 1927. The amendment provides that: "The Legislature may also provide for the formation of school districts by general laws." The effect of this amendment is to deprive the Legislature of further authority to create independent school districts by special acts, but because the amendment, and no statute enacted by the Legislature since, has attempted to modify or destroy independent school districts previously created by special act, the Morton Independent School District has no right to elect a board of seven trustees. A board consisting of more than three trustees is not authorized by the statute which created the district, and is illegal. 56 C. J. 3001.

■ Vernon's Ann. Civ. St. art. 2775, providing for the election of seven trustees, has no application to the Morton District. Said article 2775 is a part of the general school law enacted by the Legislature in 1905 (chapter 124), being section 162 thereof as found in R. S. 1911, and Vernon's Ann. Civil St. 1914, art. 2886. Despite the existence of that act at the time

the Morton Independent School District was formed, as held in the Cain Case, supra, and others, the Legislature had the right to create an independent school district by special act and limit the number of trustees to three.

██ On April 7, 1934, six new members of the board were elected. A. A. Beedy being the holdover member of the board of three members as it existed at the date of the election, as stated above, under the law only two members could have been legally elected. It is said that: "The main design of election laws is to secure a fair expression of the popular will—to ascertain the will of the electors and secure the rights of the duly qualified voters." 16 Tex. Jur. 1035. If the voters have the right to elect only two men and the election is so ordered and conducted that six are elected, the purpose of the law is defeated. Neither the election authorities nor the courts can say which two of the six are de jure officers. Turpin v. Powers, 270 Mo. 338, 192 S. W. 984. In our form of government elections must be held by virtue of some legal authority, and an election held without affirmative statutory authority or contrary to a material provision of the law is universally held to be a nullity. 20 C. J. 95, § 76; Simpson v. Teftler, 176 Ark. 1093, 5 S.W.(2d) 350; Boone v. State, 10 Tex. App. 418, 38 Am. Rep. 641. An irregularity which affects the merits of the election and defeats the intended legal results is a nullity. 9 R. C. L. 1092; 25 R. C. L. 772, § 19.

We are cited to articles 2777a and 2777b, Vernon's Ann. Civ. St. The first of these articles was enacted by the 42d Legislature, Regular Session, chapter 317. The second was enacted by the 43d Legislature, chapter 36, for the purpose of clarifying the first act. Neither of these enactments has any application to the Morton Independent School District. By the express terms of said acts, they apply to independent school districts which include cities of 200,000 population or more.

██ We therefore conclude that the election of six new trustees for the Morton Independent School District is not authorized by law. The contention is that if the new board cannot be held to have a legal existence, they had a right to control as de facto officers. Since there is no law providing for a board of seven trustees for the Morton Independent School District, there were no such offices to be filled.

There is no such thing as a de facto office. An office that does not have a de jure existence cannot have a de facto incumbent. 34 Tex. Jur. 613, § 162; Jay v. Board of Education, 46 Kan. 525, 26 P. 1025. It follows that the so-called new board had no power to declare the contract made between appellant and the regular board void and discharge the appellant, and unless it should appear that the contract with appellant is illegal for some other reason, or by his failure to appeal in the proper time and manner he has waived his rights, the judgment is erroneous.

██ It is contended that the trial court had no jurisdiction because the appellant failed to prosecute his appeal from the action of the new board within a reasonable time, and because he failed to appeal to the State Superintendent and the State Board of Education. This court has recently held in Kimmins v. Estes, 80 S.W. (2d) 387, that it was not necessary for a school teacher, who has been aggrieved by the action of the board of trustees, to appeal to the State Superintendent or the State Board of Education before applying to the courts for redress. R. S. art. 2686, as amended by Acts 1927, c. 83, § 1 (Vernon's Ann. Civ. St. art. 2686), provides that all appeals from the decision of the county superintendent of public instruction shall lie to the county board of school trustees, and should either party decide to further appeal such matters, they are here given the right to elect to appeal to any court having proper jurisdiction of the subject-matter or to the State Superintendent of Public Instruction as now provided by law, etc.

██ If we are correct in our holding that the six individuals named as trustees at the election held on April 14th are neither de jure nor de facto officers, they had no jurisdiction and their order discharging the appellant is a nullity, and when they as representatives of the district refused to permit him to act as superintendent, his right to sue for damages accrued. A party is not required to appeal from a judgment that is absolutely void because rendered by a tribunal which has no legal authority. There being no board with jurisdiction to act, and its attempted discharge being a nullity, there was no action from which he could prosecute an appeal, and although he did appeal to the county superintendent, all subsequent actions were without authority and void. His appeal to the county

superintendent and the school board was in no sense an acknowledgment of the authority of the new board of trustees. His appeal could not invest an illegal board without authority with jurisdiction. His petition seeking relief was filed in the district court on October 23, 1934, and that court had jurisdiction.

It is contended that the contract is illegal and unenforceable because of its failure to comply with the provisions of R. S. art. 2781, as amended by Acts 1930, 5th Called Sess. c. 8, § 1 (Vernon's Ann. Civ. St. art. 2781). That article provides that "all twelve-month contracts * * * with employees herein mentioned shall begin on July first and end on June 30th of the year terminating the contract." The appellant alleged that on or about February 16, 1934, the board entered into a contract in writing with him as superintendent of schools for the Morton district for a term of twelve consecutive months for the school year 1934–1935; said term to begin, unless otherwise agreed upon, on the 1st day of August, 1934, at a salary of $113.50 per school month.

The statute does not affirmatively declare that a contract covering definite months of the school year would be void, nor is there any penalty attached to the act of the parties in contracting otherwise than specified in the statute. We think the statute in the particular under consideration is merely directory. City of Uvalde v. Burney (Tex. Civ. App.) 145 S. W. 311.

By its language, it is clear that the parties contemplated that they might subsequently alter or vary the terms of the contract. It provides that the term is to begin on the 1st day of August, 1934, "unless otherwise agreed upon." We can conceive of conditions of health such as prevailing epidemics, destruction of buildings, and others which would make it almost imperative that the school term should continue through a different period than is prescribed by law. We cannot impute to an official board a deliberate intention to violate the law. The allegations in the petition with reference to this matter are so meager that we are not willing to declare, upon the face of the record, the contract void. It may have been so written through mutual mistake or from some justifiable cause which raises a question of fact. As stated, the court sustained the so-called plea in abatement without a hearing.

It is further alleged (and must be accepted as true) that the appellant was deposed and his contract canceled without a hearing, and in fact when no charges had been filed against him. Such a proceeding is wholly without warrant.

The plaintiff alleges that after his election he continued to act as superintendent until July 31, 1934, as required of him by his contract. He further alleges that he was placed in possession of the "teacherage" (which seems to be a word used to designate a dwelling provided by trustees of school districts for the superintendent).

The allegation that the contract had been performed in part must be accepted as true. It would appear from the allegations that he served the district one month for which, under his pleadings, he is not entitled to recover, as he does not seek to recover upon quantum meruit. If it be admitted that the provision under which his services were to begin August 1st is without warrant in the statute, it does not necessarily invalidate the entire contract. He was employed for a year, but his compensation was payable monthly. While teachers' contracts are ordinarily held to be entire, when the compensation is payable monthly they come within the class of contracts that are held to be severable when they are generally lawful but contain unlawful provisions. Where one provision in a contract is invalid, it may still be valid and enforceable as to the remainder, and when one, for a valuable consideration, agrees to perform and does perform several acts or services which are severable or separable, and one of these acts is unlawful and the others lawful, the contract may be declared void as to that which is unlawful and enforced as to the others. Galveston, C. & S. F. R. Co. v. Hume, 87 Tex. 211, 27 S. W. 110; 10 Tex. Jur. 246, 247.

Indulging every reasonable intendment in favor of the sufficiency of the petition, we must assume that the parties did not intentionally enter into an illegal contract. The law as written is a part of every contract.

"The attempted limitation is in violation of the statute, and therefore void. The statute will be read into the bond as though its terms had been strictly complied with." Globe Indemnity Co. v. Barnes (Tex. Com. App.) 288 S. W. 121, 123; Trinity Port-

land Cement Co. v. Lion Bonding & Surety Co. (Tex. Com. App.) 229 S. W. 483.

For the reasons stated, the judgment is reversed and the cause remanded.