THOMAS et al. v. McGOWN et al.

No. 2942.

Court of Civil Appeals of Texas. Beaumont.

May 14, 1936.

B. A. Hamilton, of Jasper, and J. R. Bogard, of San Augustine, for appellants.

Minton & Minton, of Hemphill, amicus curiae.

WALKER, Chief Justice.

On May 1, 1935, L. G. Thomas, M. E. Covington, and P. W. Chapman filed this suit as an election contest against I. H. McGown, Leroy Alford, and Lon Fussell. For cause of action contestants alleged in their petition: (1) That contestants and contestees were resident citizens of the Geneva independent school district of Sabine county; (2) that an election was duly called and held on the 6th day of April, 1935, at Geneva in the said Geneva independent school district in Sabine county for the purpose of electing three trustees for said Geneva independent school district to discharge the duties of that office "from the 1st day of May, 1935, for the term of years provided by statute"; and that said election was called "pursuant to the statute in such case made and provided"; (3) that the contestants were duly and legally elected to the office of trustee of the Geneva independent school district, and by reason of their election they were authorized and entitled to hold and enjoy their office "for the term

of years prescribed by law; that there are no emoluments of said office"; (4) that more than ten days before the date of the election contestants presented to the county judge of Sabine county, Tex., their application to have their names placed upon the official ballot for said election "for said office as required by law"; that the county judge of Sabine county accepted said application and had printed a proper ballot naming contestants as candidates for said office of school trustees; (5) "that after the lapse of ten days and prior to said election contestees presented to the county judge of Sabine county, a petition or application to have their names placed upon the ballot as candidates for school trustees of said district at said election; that the county judge of Sabine county, Tex., in strict violation of the terms of the statute relating to the placing of the names of candidates on the official ballot for said office, prepared and had printed a ticket containing the names of contestants and contestees and delivered same to the judge of said election who had been duly appointed to hold said election"; (6) that the printing and delivery of the ballots containing the names of both contestants and contestees "was void in law and of no force and effect"; that said ballots should never have been submitted to the voters at said election; that after the county judge had so printed said ballots and delivered same to the judge of the election, he instructed the judge of the election not to permit "the voters at said election to vote upon the said contestants and contestees, but to use the ballot at said election containing the names of the contestants herein, only, such ballot having heretofore been printed and delivered to said judge of said election, and that the judge of said election, though he had both ballots in his possession, they having before said election been delivered to him, and because he was a partisan at said election for the contestees herein, and in strict violation of the instructions given him by said county judge, ignored the ballots containing the names of the contestants herein and refused to use same in said election and used an illegal ballot that had no support in law, all of which was known to the judge of said election"; (7) that the judge of said election in permitting the use of the illegal ballots acted "in disregard to the legal rights of the contestants herein and for the purpose of defeating them in rights given them under

the law; that a fraud was committed upon contestants herein, in that they were denied their legal rights"; (8) other illegal acts were charged to wit, qualified voters who would have voted for contestants were denied the right to vote, and certain persons not qualified to vote were given that right by the judge of the election, and such persons voted for contestees; but contestants received, in fact, a majority of the legal votes cast at the election, and were legally elected trustees. Under this count, contestants plead in detail the facts constituting these allegations of fraud; (9) "contestants would further represent and show to the court that all of the ballots cast at said election were not properly called, counted and tallied and if they had been a different result would have been declared, and they here now ask the court to have said ballots recounted in order that the true result of said election be declared"; (10) "that the contestee Leroy Alford received 95 votes, that contestee Lon Fussell received 86 votes, that contestee I. H. McGown received 86 votes; that contestant Paul Chapman received 81 votes, that contestant M. E. Covington received 85 votes, and that contestant L. G. Thomas received 84 votes. That if none save and except persons who were legally entitled to cast a ballot at said election had been permitted to vote, then the result of said election would have been different and the contestants herein would .nave been declared legally elected trustees of said school district * * * that pursuance of said election the judge thereof made returns of same to the board of trustees of said district, of which contestees herein were members at that time, which board of trustees, including the contestees herein, canvassed the returns of said election and declared the contestees duly and legally elected to said office"; (11) contestants further alleged the statutory notice to contestees of their intention to contest the election, and that they delivered to each of the contestees a statement in writing of the grounds of the contest; (12) contestants prayed as follows: "Wherefore contestants pray the court that the contestees herein be cited to appear and answer herein as the law directs, that said election be declared an illegal election in so far as the contestees herein are concerned and that they be declared not legal candidates in said election and that the contestants be declared the only legal candidates at said election

and be declared the duly elected trustees of said school district; that said illegal votes herein enumerated be held void for the reasons herein stated and that the result of said election be declared after said illegal votes are taken from the results and returns thereof, for all costs in this behalf expended, for such other and further relief, special and general, in law and in equity, to which they may show themselves entitled. Contestants also pray for general relief."

## Opinion.

The election in issue was controlled by article 2746a, R.C.S.1925, as amended by 44th Legislature, which reads as follows. (See Acts of the 44th Legislature, Regular Session of 1935, c. 55, pp. 135–136, approved March 28th, 1935 and effective March 28th, 1935 [Vernon's Ann.Civ.St. art. 2746a]): "Art. 2746a. Official Ballot. All of the ballots for the election of a school trustee in common school districts and in independent school districts having fewer than five hundred (500) scholastics as shown by the last preceding scholastic census roll approved by the State Department of Education and exclusive of transfers shall be printed with black ink on clear white paper, of sufficient thickness to prevent the marks thereon being seen through the paper, and be of uniform style and dimension; at the top of the ballot there shall be printed 'Official Ballot, ————— Independent School District,' the number or name of the school district in which the election is to be held to be filled in by the judge of the county when he orders the ballots printed. Any person desiring to have his name placed on said official ballot, as a candidate for the office of trustee of a common school district or of an independent school district as herein provided shall, at least ten days before said election, file a written request with the county judge of the county in which said district is located, requesting that his name be placed on the official ballot, and no candidate shall have his name printed on said ballot unless he has complied with the provisions of this Act; provided that five or more resident qualified voters in the district may request that certain names be printed. The county judge, upon receipt of such written request, and at least five days before the election, shall have the ballots printed as provided in this Act, placing on the ballot the name of each candidate who has complied with.

**842**

the terms of this Act, and deliver a sufficient number of printed ballots and amount of supplies necessary for such election to the presiding officer of the election at least one day before said election is to be held, said election supplies, ballots, boxes, and tally sheets to be delivered by the county judge by mail or in any other manner by him deemed best, to the presiding officer of said election in sealed envelopes which shall not be opened by the election officer until the day of the election. The expenses of printing the ballots and delivering same to the presiding officer, together with the other expenses incidental to said election shall be paid out of the available maintenance funds belonging to the school district in which said election is held, or to be held. The officers of said election shall be required to use the ballots so furnished by the county judge as provided herein. *The election officers shall make returns of said election to the county judge and certify the result in the same manner as is now required by law, and said ballot boxes which shall have been furnished by local school officials shall be sent to the county judge and said election returns shall be canvassed by the Commissioners' Court and together with ballot boxes shall be safely preserved for a period of three months* next after the date of the election." (Italics ours.)

There is no affirmative allegation in the petition that the Geneva independent school district had "fewer than five hundred (500) scholastics as shown by the last preceding scholastic census roll approved by the State Department of Education and exclusive of transfers"; but the following fact allegations of the petition bring the Geneva independent school district within the provisions of this statute: (a) The ballots were printed by the county judge of Sabine county; (b) the contestants filed their application with the county judge more than ten days before the date of the election; the county judge accepted their application and had their names printed on the ballot; (c) under the provisions of said article 2746a, as amended, on the allegations of the petition, contestees did not have the right to have their names printed on the official ballot; (d) the county judge delivered the official ballots to the judge of the election. These fact allegations of the manner in which the election was called and the ballots were printed and distributed have legal justification only under the provisions of article 2746a, as amended in 1935. As that article controlled the election, then it also controlled the manner of making and canvassing the returns of the election; in fact, each successive stage of the election from its call to the canvassing of the returns was controlled by that article. It also prescribed the mode of procedure by which the election officers of trustee elections must make their returns, and to whom the returns were to be made and canvassed. Under the provisions of this article, at no stage of the election proceedings, prior to the canvass of the returns by the commissioners' court, was the election complete. But by the allegations of contestants' petition, the returns of the election were made to the board of trustees of the Geneva independent school district, and the returns were canvassed by said board of trustees, and the result was declared by the said board of trustees. It follows, on the facts alleged, that the election was never completed. The following quotation from Leslie v. Griffin (Tex. Com.App.) 25 S.W.(2d) 820, 821 (an election contest case) sustains the judgment of the court dismissing contestants' petition:

"The paramount question in this case goes to the power of the trial court to entertain the complaint of the defendant in error and to grant the relief sought. It is no longer an open question in this state that an election is essentially the exercise of political power, and, during its progress, is not subject to judicial control. This comprehends the whole election, including every step and proceeding necessary to its completion. The making and canvassing of the returns, by the appointed functionaries, constitute an integral part of the election, without which the election would be incomplete; and courts are powerless to control the proceeding. City of Dallas v. Ry. Co., 105 Tex. 337, 148 S.W. 292; Winder v. King (Tex.Com. App.) 1 S.W.(2d) 587. * * *

"There cannot be found, either in the Constitution or in the statutes, any provision which gives any court, prior to the completion of the election, the authority to inquire as to the correctness or regularity of returns which have been made by the proper functionaries. It is understood by every one, of course, that courts are clothed with the authority to enforce private rights; but no citizen,

even though he be a candidate in the election, is given a private right to contest the returns made by the proper officials until after the election is completed. The instant case is essentially a proceeding having for its object a contest of the returns of an uncompleted election."

The judgment of the lower court is in all things affirmed.